https://advance.lexis.com/documentprint/documentprintclick/?pdmfid=1...

Lexis Advance®
Research

Document:Cherry v. Wash. County, 526 Fed. Appx. 683

# Cherry v. Wash. County, 526 Fed. Appx. 683

Copy Citation

United States Court of Appeals for the Seventh Circuit

May 9, 2013, Submitted *; May 10, 2013, Decided

No. 12-2647

**Reporter**

**526 Fed. Appx. 683** * | 2013 U.S. App. LEXIS 9525 ** | 2013 WL 1933053

EUGENE L. CHERRY, Plaintiff-Appellant, v. WASHINGTON COUNTY, WISCONSIN, et al., Defendants-Appellees.

**Notice:** PLEASE REFER TO FEDERAL RULES OF APPELLATE PROCEDURE RULE 32.1 GOVERNING THE CITATION TO UNPUBLISHED OPINIONS.

**Subsequent History:** US Supreme Court certiorari denied by Cherry v. Wash. County, 2013 U.S. LEXIS 7896 (U.S., Nov. 4, 2013)

**Prior History:** [**1] Appeal from the United States District Court for the Eastern District of Wisconsin. No. 11-C-1021. William C. Griesbach, Chief Judge.

Cherry v. Wash. County Sheriffs' Dep't, 2012 U.S. Dist. LEXIS 90514 (E.D. Wis., June 29, 2012)

**Disposition:** AFFIRMED.

## Core Terms

arrest, district court, burglary, probable cause, summary judgment, circumstances, walking, pushed,

officer's, caller, ditch, trunk

## Case Summary

**Procedural Posture**

In a 42 U.S.C.S. § 1983 case, pro se appellant inmate sought judicial review of the United States District Court for the Eastern District of Wisconsin's entry of summary judgment in favor of appellees, a county and law enforcement officers, in regards to his claims that the law enforcement officers who caught him lacked probable cause to make an arrest and also used excessive force in taking him into custody.

**Overview**

Taken as a whole, the circumstances at the time of the inmate's arrest were sufficient to support a reasonable belief that he and his companion were the fleeing burglars. The inmate and his companion were out in the rural area with no vehicle in sight, were close to the scene of the crime, and were muddy from their feet to their knees. The officers reasonably inferred, based on a common-sense assessment, that there was a substantial probability that they had committed the burglary and then fled through the backyard into the large grassy area, splattering mud on their pants. The arresting officers did not employ excessive force by pointing their guns at the inmate during the arrest. His contention did not survive summary judgment that one officer used excessive force by pushing him to the ground and pressing his face against the road during the arrest. The inmate had disobeyed the officers' instructions to look straight ahead and not turn around. He did not discover which of the officers was responsible for pushing him down. He was under arrest for a serious crime, a home invasion, and his excessive force claim failed as a matter of law.

**Outcome**

The judgment of the district court was affirmed.

▼ LexisNexis® Headnotes

Civil Rights Law > ... > Scope ▼ > Law Enforcement Officials ▼ > Arrests ▼

Criminal Law & Procedure > Commencement of Criminal Proceedings ▼ > Arrests ▼ > Probable Cause ▼

**HN1** Probable cause exists if, at the time of the arrest, the facts and circumstances within the officer's knowledge are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense. A court assesses what the arresting officers knew from the perspective of a reasonable person in their position, and a court imparts to those officers all information known by other officers with whom they were in communication. More like this Headnote

*Shepardize* - Narrow by this Headnote (0)

Civil Rights Law > ... > Scope > Law Enforcement Officials > Arrests

Criminal Law & Procedure > Commencement of Criminal Proceedings > Arrests >

Probable Cause

**HN2** In the context of probable cause for an arrest, an officer is not required to gather enough evidence to support a conviction or even enough to demonstrate that it was more likely than not that the suspect was engaged in criminal activity. An officer needs only to determine whether he or she has enough information to establish probable cause. More like this Headnote

*Shepardize* - Narrow by this Headnote (0)

Civil Rights Law > ... > Scope > Law Enforcement Officials > Excessive Force

Civil Rights Law > ... > Scope > Law Enforcement Officials > Search & Seizure

Constitutional Law > ... > Fundamental Rights > Search & Seizure >

Scope of Protection

**HN3** An excessive-force claim arises in the context of a seizure of a free citizen, and thus is governed by the Fourth Amendment's reasonableness standard. More like this Headnote

*Shepardize* - Narrow by this Headnote (4)

Civil Rights Law > ... > Scope > Law Enforcement Officials > Arrests

Civil Rights Law > ... > Scope > Law Enforcement Officials > Excessive Force

Constitutional Law > ... > Fundamental Rights > Search & Seizure > General Overview

Criminal Law & Procedure > Commencement of Criminal Proceedings > Arrests >

Reasonable Force

**HN4** An officer's use of force during an arrest is not excessive unless in light of the totality of the circumstances, it was greater than was reasonably necessary to effectuate the seizure. Relevant factors include the severity of the crime for which the suspect is wanted and the suspect's behavior during the arrest, e.g., whether he resisted or attempted to flee. More like this Headnote

*Shepardize* - Narrow by this Headnote (1)

Civil Rights Law > ... > Scope > Law Enforcement Officials > Excessive Force

**HN5** A plaintiff who is assaulted by one police officer in the presence of others need not identify the officer who struck him if the assault was ongoing and other officers had a realistic opportunity to intervene. More like this Headnote

*Shepardize* - Narrow by this Headnote (1)

**Counsel:** EUGENE L. CHERRY, Plaintiff - Appellant, Pro se, Green Bay, WI.

For WASHINGTON COUNTY, WISCONSIN, DALE K. SCHMIDT, JAMES WOLF, THOMAS ABBOTT, Defendants - Appellees: Martin James DeVries, Attorney, SAGER & COLOWIN, Fond du Lac, WI.

**Judges:** Before JOEL M. FLAUM, Circuit, Judge, DIANE S. SYKES, Circuit Judge, JOHN DANIEL TINDER, Circuit Judge.

## Opinion

**[*684] ORDER**

Eugene Cherry was ransacking a home when sheriff's deputies interrupted the burglary. He fled but was apprehended an hour later. Cherry was convicted and is in prison, but in this suit under 42 U.S.C. § 1983, he claims that the law-enforcement officers who caught him lacked probable cause to make an arrest and also used excessive force in taking him into custody. The district court granted summary judgment **[*685]** for the defendants, and Cherry appeals. We affirm the judgment.

The facts, which we recite in the light most favorable to Cherry, are undisputed unless otherwise noted. One morning in late 2010, the dispatch center in Washington County, Wisconsin, received a call from a man reporting that an unfamiliar car was [**2] parked in the driveway of his neighbor's home in a rural, residential area in the town of Addison. The caller reported that the driver, a Caucasian woman, initially had pulled the car into the driveway nose first but turned it around and backed the trunk to the garage after a black male had exited the car, walked to the front door, and quickly returned to the car. At that point, the caller said, that man and another black male had walked around the back of the house while the woman waited in the driver's seat. Deputy Sheriff Ronald Rewerts was dispatched to investigate. Upon arriving he saw that the trunk of the car was open and facing the garage. (Cherry insists that the trunk was closed, but he was nowhere in sight and does not aver that he watched Rewerts arrive. Thus, Cherry did not establish personal knowledge about whether the trunk was open at that time. The driver, Valerie Dabel, did not dispute the deputy's account.) Rewerts approached Dabel, who identified herself, and asked why she was at the house. Dabel replied that she had stopped for directions and that the people with her had gone to the back of the house. Rewerts doubted that Dabel was just seeking directions since [**3] the home was well off the road and she had not explained why the men went to the back of the house or why she was parked with the open trunk facing the garage. Rewerts suspected that a burglary was in progress and called for backup.

Additional deputies soon arrived on the scene. They found that the house, by then unoccupied, had been entered through a forced door at the rear of the attached garage. Inside the house Rewerts observed that numerous items had been gathered to be loaded into Dabel's car. The bedroom had

been ransacked, electronics had been disconnected and piled with other valuables in the living room, and a television was unplugged and resting on the floor between the kitchen and dining room. Another deputy discovered a 10-round box of shotgun shells on the hallway floor. In the backyard Rewerts discovered a trail of footprints and loose coins and currency leading toward a large grassy area running behind the property.

Just over an hour after the first call, the dispatch center received a call from a man reporting that two unknown men, one black and the other Hispanic, were walking in a ditch along a road, approximately one mile from the burglary, and that both appeared [**4] wet and muddy up to their knees. Michael Anderson, Michael Cummings, Buck Robertson, Bruce Theusch, and James Wolf, all with the sheriff's department, left the residence and proceeded to the location described by the caller. As they closed in, Anderson and Robertson set up a perimeter while Cummings, Theusch, and Wolf continued driving down the road. They soon saw Cherry and Steven Turner—both of whom are black—muddy and walking in the ditch. The three officers exited their cars, pointed their guns at the suspects, and ordered them to get on the ground. After Cherry and Turner had complied, they were searched, handcuffed, and taken into custody. Cherry and Turner were convicted at trial of burglary and criminal damage to property, see WIS. STAT. §§ 943.10, 943.01, though Dabel was acquitted. Cherry's direct appeal is still pending. See State v. Cherry, No. 2012AP001137 (Wis. Ct. App. filed May 23, 2012).

 [*686]  After his conviction Cherry brought this suit in federal court naming as defendants the Washington County Sheriff's Department (which is not a justiciable entity, so we have corrected the caption to instead name the county, see Wagner v. Washington County, 493 F.3d 833, 835 (7th Cir. 2007)),  [**5] as well as every law-enforcement officer involved in investigating the burglary. (Dabel also was a plaintiff, but she has not appealed the grant of summary judgment for the defendants.) Cherry claims that he was arrested without probable cause and was subjected to unreasonable force during that arrest; only Cummings, Theusch, and Wolf were involved in collaring Cherry, so the remaining defendants are irrelevant. (Cherry did file in the criminal case, and lost, a motion to suppress evidence derived from his arrest, but the materials in the record do not identify the factual issues litigated in state court and the defendants did not raise collateral estoppel as an affirmative defense.)

Both sides moved for summary judgment. Cherry asserted that the facts recited above establish that the three defendants who made the arrest did not have probable cause and took him into custody only because of his race. He also submitted an affidavit attesting that the defendants drew their weapons even though he did not attempt to flee or resist arrest, at least not initially. By his own account, though, Cherry had intentionally disobeyed an order to look straight ahead and not turn around, and when he [**6] defied that instruction, one of the defendants pushed him to the ground and pressed his face against the road, causing "excruciating pain." In their motion for summary judgment, Cummings, Theusch, and Wolf countered that Cherry's claim of false arrest must fail because they had an obvious factual basis to believe that he participated in the burglary. The three defendants also argued that drawing their weapons had been reasonable since they believed Cherry was fleeing a burglary and might be armed with a weapon from the residence. The defendants did not respond, however, to Cherry's allegation that one of them pushed him down when he tried to turn around.

The district court, although skeptical that the information known at the point of arrest was sufficient to establish probable cause, concluded that it was enough for Cummings, Theusch, and Wolf to believe in good faith that probable cause existed. Thus, the court reasoned, the three defendants enjoyed qualified immunity from a claim of false arrest. The court also concluded that making the arrest at gunpoint was justified. And the force used to control Cherry, the court said, was not excessive under the circumstances because it entailed [**7] only "temporary pain and discomfort" and, regardless, Cherry had failed to identify which of the three defendants had shoved him to the ground.

On appeal Cherry challenges the district court's analysis of both claims. On the subject of probable cause, Cherry contends that Cummings, Theusch, and Wolf did not even possess enough information to form a good-faith belief that there was probable cause to arrest him. We reject that contention, and indeed we conclude that discussing qualified immunity is unnecessary.

**HN1** Probable cause exists "if, at the time of the arrest, 'the facts and circumstances within the officer's knowledge . . . are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense.'" Gonzalez v. City of Elgin, 578 F.3d 526, 537 (7th Cir. 2009) (quoting Michigan v. DeFillippo, 443 U.S. 31, 37, 99 S. Ct. 2627, 61 L. Ed. 2d 343 (1979)). We assess what the arresting  [*687]  officers knew from the perspective of a reasonable person in their position, see Harney v. City of Chicago, 702 F.3d 916, 923-24 (7th Cir. 2012); Mucha v. Village of Oak Brook, 650 F.3d 1053, 1057 (7th Cir. 2011), and we [**8] impart to those officers all information known by other officers

with whom they were in communication, see United States v. Nicksion, 628 F.3d 368, 376 (7th Cir. 2010); United States v. Ellis, 499 F.3d 686, 690 (7th Cir. 2007).

Taken as a whole, the circumstances at the time of Cherry's arrest were sufficient to support a reasonable belief that he and his companion were the fleeing burglars. A little over an hour after the first caller had reported seeing two unknown black males skulking around the back of a neighbor's house, a second caller had reported seeing two unknown men about a mile from that rural residence walking *in* a ditch instead of on the road the ditch followed. When Cummings, Theusch, and Wolf reached that location, they saw Cherry and Turner, who are both black, walking in the ditch. The two men were out in the rural area with no vehicle in sight, were close to the scene of the crime, and were muddy from their feet to their knees. The defendants reasonably inferred, based on a common-sense assessment, that there was a substantial probability that Cherry and Turner had committed the burglary and then fled through the backyard into the large grassy area, splattering mud [**9] on their pants. See United States v. McCauley, 659 F.3d 645, 649 (7th Cir. 2011); United States v. Williams, 627 F.3d 247, 251 (7th Cir. 2010); United States v. Reed, 443 F.3d 600, 603 (7th Cir. 2006). And though the district court suggested that the three defendants could have investigated further before arresting Cherry and Turner, HN2 the defendants were not required to "gather enough evidence to support a conviction or even enough to demonstrate that it was more likely than not that the suspect was engaged in criminal activity." United States v. Bueno, 703 F.3d 1053, 1065 (7th Cir. 2013). The defendants needed only to determine whether they had enough information to establish probable cause, and we readily conclude that they did. The issue of qualified immunity thus falls away. See Harney, 702 F.3d at 923-24; Mucha, 650 F.3d at 1057.

What remains is Cherry's contention about the force used in making the arrest, and on this question his brief barely is adequate to present a claim for appeal. See FED. R. APP. P. 28(a)(9); Anderson v. Hardman, 241 F.3d 544, 545 (7th Cir. 2001). Regardless, we conclude that the defendants were entitled to summary judgment.

First, we agree with the district [**10] court that the arresting officers did not employ excessive force by pointing their guns at Cherry during the arrest. They had found shotgun shells on the hallway floor of the residence and from that evidence reasonably inferred that the suspects might have taken guns from the home. Thus, the defendants were entitled for their own protection to point their weapons at Cherry as they approached him. See United States v. Watson, 558 F.3d 702, 704 (7th Cir. 2009); United States v. Askew, 403 F.3d 496, 507 (7th Cir. 2005).

Second, to the extent that this claim rests on Cherry's contention that one of the defendants used excessive force by pushing him to the ground and pressing his face against the road during the arrest, we agree with the district court that the claim does not survive summary judgment. As we have noted, Cherry acknowledges that he disobeyed the officers' instructions to look straight ahead and not turn around. As the district court pointed out, the modest force used to control Cherry after he disobeyed that order caused at **[*688]** most only "temporary pain and discomfort."

HN3 The excessive-force claim "arises in the context of a seizure of a free citizen, [and thus] is governed by the [**11] Fourth Amendment's reasonableness standard." Holmes v. Village of Hoffman Estates, 511 F.3d 673, 685 (7th Cir. 2007) (citing Graham v. Connor, 490 U.S. 386, 394-95, 109 S. Ct. 1865, 104 L. Ed. 2d 443 (1989)). HN4 An officer's use of force during an arrest is not excessive unless "in light of the totality of the circumstances, it was greater than was reasonably necessary to effectuate the seizure." Id. Relevant factors include the severity of the crime for which the suspect is wanted and the suspect's behavior during the arrest, e.g., whether he resisted or attempted to flee. Id. Cherry was under arrest for a serious crime—a home invasion—and in light of his acknowledged defiance of the officers' orders and the momentary nature of the pain and discomfort he claims to have suffered, we agree with the district court that the excessive-force claim fails as a matter of law.

The district court noted in the alternative that Cherry did not identify who shoved him during the arrest, nor did he make any effort during discovery to find out which of the three defendants was responsible. The judge reasoned that this omission is also dispositive, and again we agree. We add the caveat, though, that HN5 a plaintiff who was assaulted by one police [**12] officer in the presence of others need not identify the officer who struck him if the assault was ongoing and other officers had "a realistic opportunity to intervene." Miller v. Smith, 220 F.3d 491, 495 (7th Cir. 2000); see Sanchez v. City of Chicago, 700 F.3d 919, 925-26 (7th Cir. 2012). Yet Cherry avers only that he was "knocked over forward" and pressed face down when he defied an order, and this immediate reaction by one defendant to control him did not last long enough for the others to intervene. So it was critical for Cherry to identify the defendant who pushed him since only that one defendant could be liable for the use of excessive force. See Lewis v. Downey, 581 F.3d 467, 472 (7th Cir. 2009) (defendant officer could not be liable under § 1983 because he did not have realistic opportunity to stop another officer from making single use of taser against plaintiff); Lanigan v. Village of E. Hazel


*Crest, Ill.*, 110 F.3d 467, 478 (7th Cir. 1997) (defendant officer who saw another officer push and poke plaintiff once did not have time to prevent incident); *Gaudreault v. Municipality of Salem, Mass.*, 923 F.2d 203, 207 n.3 (1st Cir. 1990) (defendant officers were not liable for another [**13] officer's attack on plaintiff that lasted only seconds); *O'Neill v. Krzeminski*, 839 F.2d 9, 11-12 (2d Cir. 1988) (three blows suffered by plaintiff "were struck in such rapid succession" that nearby officer had no opportunity to prevent them). And since Cherry did not discover which of the three defendants was responsible for pushing him down, we need not decide whether a jury reasonably could find that the force used was unreasonable under the circumstances.

AFFIRMED.

**Footnotes**



\* After examining the briefs and record, we have concluded that oral argument is unnecessary. Thus, the appeal is submitted on the briefs and record. See FED. R. APP. P. 34(a)(2)(C).

**Content Type:** Cases

**Terms:** 526 Fed. Appx. 683

**Narrow By:** Court: 7th Circuit or Wisconsin

**Date and Time:** May 30, 2017   12:15:32 p.m. EDT

About LexisNexis®   Privacy Policy   Terms & Conditions   Sign Out

Copyright © 2017 LexisNexis. All rights reserved.